ALANNA D. COOPERSMITH, SBN 248447
Attorney at Law,
717 Washington Street
Oakland, California 94607
T-(510) 628-0596
F-(866) 365-9759
alanna@eastbaydefense.com

Attorney for Defendant
CARLOS DANIEL CUEVAS RAMOS

UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 20-mj-71799 MAG |
| Plaintiff, | DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION TO REVOKE RELEASE ORDER |
| vs. | |
| GUSTABO RAMOS, | Honorable Edward J. Davila |
| Defendant. | |

**Introduction**

The defendant is a young man who came to the United States from Honduras in 2018 in search of a better life. He has lived in the Bay Area for most of that time. His single criminal conviction is for a low-level felony, accessory after the fact under section 32 of the California Penal Code.

Although the defense agrees that the offense of selling fentanyl is serious criminal conduct and that Mr. Ramos does not have longstanding ties to the Bay Area, we submit that the magistrate judge has imposed conditions of pretrial release that will be sufficient to neutralize any risk of flight or danger to the public. Under the terms of the release order, Mr. Ramos will begin with 24-hour lockdown under the supervision of Pretrial Services that can be modified at a later date subject to good behavior. He will live in the house of his

girlfriend Yoselin Pamela Gomez Flores and her family in Daly City. Ms. Gomez has agreed to serve as custodian and surety.

**Factual Background**

Mr. Ramos was born in Francisco Morazan, Honduras. He lived with his mother, brother, and sister. Like his two siblings, he only made it to the sixth grade. School cost money. His mother did work in laundry and childcare. Mr. Ramos worked in the fields.

In the spring of 2018, Mr. Ramos came to the United States. He was apprehended at the border. According to Border Patrol documents, his name was Carlos Cuevas Ramos (aka Gustabo Ramos). His date of birth was listed as both 11/xx/98 and 9/xx/2001. According to what he has told counsel, his date of birth is actually 11/xx/2003, which makes him 17 years old and not fit for prosecution as an adult or to be held at Santa Rita Jail.[1]

Mr. Ramos has resided continuously in the San Francisco Bay Area since the spring of 2018. He does not possess a passport. He was unemployed at the time of his arrest on December 10 of 2020 at his Oakland home. Prior to the pandemic, he worked as a dishwasher in the Embarcadero and janitor in the Mission according to the information he supplied Pretrial Services.

Mr. Ramos's criminal history consists of one conviction for felony accessory after the fact (California Penal Code 32) in San Francisco. According to the San Francisco Police Department report, officers stopped him for violating a stay-away order to stay out of the Tenderloin District of San Francisco. During the detention, he elbowed an officer, causing minor swelling to the right side of his forehead, and was found to be in possession of brass knuckles and drugs.

Mr. Ramos was arrested on December 10, 2020 for possession with the intent to distribute fentanyl in violation of 21 U.S.C. § 841(a)(1). Agents recovered an AK-47-style rifle and ammunition from his home.

---

[1] Mr. Ramos has filed a motion to dismiss for lack of jurisdiction (ECF No. 10) which he has withdrawn without prejudice pending the opportunity of defense counsel to perform further investigation into his age.

**Procedural History**

After an initial appearance on December 11, 2020, at which the case was unsealed and the government moved for detention, the court appointed counsel from the CJA panel on December 16, 2020. The court ordered Pretrial Services to prepare a full bail study. In a bail report prepared by Pretrial Services Officer Carolyn Truong on December 21, 2020, Pretrial Services determined that the defendant poses a risk of flight that cannot be reasonably mitigated by release conditions. It found that Yoselin Pamela Gomez Flores is not a viable surety because of her immigration status.

At the detention hearing on December 22, 2020, the magistrate judge released Mr. Ramos from detention under a number of stringent conditions. He would be live in the Daly City home of his girlfriend Yoselin Pamela Gomez Flores under twenty-four-hour lockdown. He would be subject to drug treatment and testing at the discretion of Pretrial Services. Ms. Gomez would serve as the custodian and sign a $15,000 appearance bond. The release order has been stayed pending the instant motion to review the release order filed by the government. (ECF No. 13.)

I. **Legal Standard**

The Bail Reform Act mandates release of a person pending trial unless a court finds the person a flight risk or a danger to the community. 18 U.S.C. § 3142(b). The court must impose "the least restrictive further condition, or combination of conditions" it "determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B). The government bears the burden of proof, by clear and convincing evidence that a defendant poses a danger to the community, or by a preponderance of evidence that a defendant poses a flight risk, which cannot be mitigated through the imposition of conditions of release. *United States v. Motamedi*, 767 F.2d 1403, 1405-06 (9th Cir. 1985). Even if a person is deemed a danger or a flight risk, they must "still be released of there is a 'condition or combination of conditions that will reasonably assure' the appearance of the person and the safety of the community.

*United States. v. Hir*, 517 F.3d 1081, 1091-92 (9th Cir. 2008) (quoting 18 U.S.C. § 3142(2)).) "Only in rare circumstances should release be denied, and doubts regarding the propriety of release are to be resolved in favor of the defendant." (*United States v. Santos-Flores*, 794 F. 3d 1088, 1090 (9th Cir. 2015).)

The fact an accused may be an undocumented immigrant is not presumptive evidence of flight risk. *See United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985) (concluding that alienage may be taken into account, but "does not tip the balance either for or against detention"); *United States v. Trujillo-Alvarez*, 900 F. Supp. 2d 1167, 1174 (D. Or. 2012) ("Congress chose not to exclude deportable aliens from consideration for release or detention in criminal proceedings.").

In a controlled substance case, such as here, in which the maximum sentence is ten years or more, there exists a rebuttable presumption that no combination of conditions will reasonably assure the appearance of the person or safety of the community. (18 U.S.C. § 3142(e)(3)(A).) Although the presumption shifts a burden of production to the defendant, the burden of persuasion remains with the government. *Hir*, 517 F.3d at 1086. The presumption does not evaporate when a defendant proffers evidence to rebut it; rather the presumption remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)." *Id.*

The standard of review that the district court applies on a review of a detention order is de novo. *U.S. v. Koenig*, 912 F.2d 1190 (9th Cir.1990).

**II.  The Pretrial Release Order Reasonably Assures Appearance of the Defendant and Safety of the Community**

This is not a sentencing hearing, but a pretrial release proceeding. The weight of the evidence is the least important factor in analyzing the defendant's suitability for release. *Motamedi*, 767 F.2d 1403, 1408. This is precisely because the defendant is entitled to the presumption of innocence and because the purpose of a detention hearing is not to punish the defendant for the wrongs he has committed, but to balance his prerogative in liberty with the

government's interest in ensuring his appearance and protecting the public. *Id.*; *United States v. Salerno*, 481 U.S. 739, 750-51 (1987).

This is exactly the balance which Magistrate Judge Beeler has struck.

The defendant has a criminal record which consists of one felony conviction and "limited or no history of violence." PTS Rept. at 9. He does not possess a passport or travel documents. He will be subject to house arrest at the Daly City home of his girlfriend, to be electronically monitored by Pretrial Services. Pamela Gomez lives with her aunt, uncle, and two adult cousins in a three-bedroom apartment in Daly City. Ms. Gomez is employed as a server at Pollo Campero. She has lawful status in this country. The other members of her family are hard-working and law-abiding as well. She will serve as a moral exemplar to Mr. Ramos. She has committed to serving as his surety and custodian, ensuring that he complies with the stringent conditions of his pretrial release, including house arrest.

**Conclusions**

For these reasons, Mr. Ramos urges that the pretrial release order be affirmed.

Dated: December 28, 2020                                   Respectfully Submitted,

                                                                                          Alanna D. Coopersmith
                                                                                           Attorney for Defendant,
                                                                                           Carlos Daniel Cuevas Ramos